Benjamin F. and Marie D. Castle v. Commissioner.
Castle v. Commissioner
Docket No. 3540.
United States Tax Court
1945 Tax Ct. Memo LEXIS 326; 4 T.C.M. (CCH) 80; T.C.M. (RIA) 45030; January 24, 1945
*326 Knowlton Durham, Esq., for the petitioner. J. Richard Riggles, Jr., Esq., for the respondent. STERNHAGEN Memorandum Opinion STERNHAGEN, Judge: A deficiency of $577.33 in income tax for 1940 is assailed insofar as it results from the disallowance of a deduction taken for net loss by reason of the worthlessness in the tax year of 250 shares in the C. W. Young Management Corporation. The Commissioner's position is that the shares were worthless before the beginning of the year. [The Facts] The petitioners, husband and wife, filed their joint return for 1940 in Baltimore, Maryland. In August, 1938, petitioner (always herein referring to the husband only) bought 250 preferred and common shares of C. W. Young Management Corporation, a corporation doing business as investment counsel, whose entire income consisted of fees for advisory service. Petitioner was then executive vice-president. The shares were bought for $5,834.06. Soon thereafter it was found that the overhead expenses overbalanced the income, and in November, 1939, the corporation's accounts were transferred as Young accounts to another firm of investment counsel for a promise of half the fees, the other *327 firm to service them and pay all expenses. The estimated fees from the accounts were expected to be about $25,000, and the Young corporation expected that its clients would renew from time to time, and that the arrangement with the other firm would continue for a year or two. The Young corporation then had no tangible assets. It had a claim against a Young & Ottley corporation which had an uncertain potential value, and which was on the Young corporation balance sheet at $1. It had several outstanding liabilities amounting to about $40,000 for legal, accounting, and other services, covered by promissory notes, which would become due in 1941 and 1942. In 1940, the contracts for service which had been made with clients were not renewed, and the officers lost all hope of continuing in business and having income. No corporate or stockholders' action or bankruptcy proceedings occurred. As shown by the corporation's income tax returns, its earnings for the fiscal year ended April 30, 1937, were $132,506.31; 1938, $119,770.28; 1939, $51,892.80. The diminution was attributable to the non-renewal or cancellation of contracts, and perhaps to the filing of charges against the corporation in 1938 *328 by a subscriber of stock. Upon this question of fact, whether the taxpayer in 1940 sustained a loss by reason of the shares having become worthless in that year, we find from all the evidence that the shares did become worthless in 1940 and the taxpayer in that year sustained a loss amounting to the cost to him of $5,834.06. Of this amount of loss, he is entitled under the statute to deduct one-half, since he held the shares more than eighteen months. The Commissioner's contention that the taxpayer's loss was sustained in 1939, we think, is shown by the evidence to be in error. There was undoubtedly in 1939 a serious shrinkage in the value of the shares, and plenty of room for doubt as to whether a shareholder would ever recover his investment in them. But there was apparently, as a result of the November contract transferring the corporation's accounts with clients to another firm, a hope and belief that these accounts would be renewed and new accounts added yielding a share of the fees. There was enough foundation for this to have frustrated an attempt by the taxpayer to take a deduction for the shares in 1939. In this narrow field of judgment we cannot say that the taxpayer clearly *329 suffered his loss in 1939 and not, as he supposed in 1940. There is nothing to suggest that he was postponing his recognition of his manifest loss for the purpose of a fictitious tax deduction. Decision will be entered under Rule 50.